ANDREW WONG, ESQ.
NEVADA BAR NO. 14133
YI LIN ZHENG, ESQ.
NEVADA BAR NO. 10811
VEGAS GOLDEN LAW
500 ROSE STREET
LAS VEGAS, NV 89106
PHONE (702) 385-7170
EMAIL: VEGASGOLDENLAW@GMAIL.COM

Attorney for Plaintiff Daisy Lynn Meadows

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DAISY LYNN MEADOWS,<br><br>        Plaintiff,<br><br>v.<br><br>STATE OF NEVADA DEPARTMENT OF CORRECTIONS; ET.AL.,<br><br>        Defendants. | Case No. 2:23-cv-755-RFB-MDC<br><br>**FIRST AMENDED COMPLAINT** |

**FIRST AMENDED COMPLAINT**

Plaintiff DAISY LYNN MEADOWS, fka Roy Trost, an individual, files this First Amended Complaint for damages and injunctive relief pursuant to 42 U.S.C. §1983 (civil action for deprivation of rights), 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. § 1367(a) (supplemental jurisdiction), and 28 U.S.C. §2201 (creation of remedy).

**I.   NATURE OF ACTION**

This is an action under 42 U.S.C. §1983 and the Nevada Constitution seeking to address the violations of Plaintiff's constitutional rights.  Ms. Meadows was assigned the male gender at birth, but expresses the female gender.  During her incarceration, the Nevada Department of Corrections (NDOC) and individuals associated with NDOC retaliated against Ms. Meadows for exercising her First Amendment rights and failed to protect her from unsafe prison

conditions. Specifically, while Ms. Meadows was incarcerated at High Desert State Prison (HDSP), NDOC officials and employees ridiculed and harassed Ms. Meadows when she engaged in protected First Amendment Speech. The NDOC and its officials and employees also failed to protect Ms. Meadows from unsafe prison conditions at HDSP.

Ms. Meadows is entitled to relief for these violations of the United States Constitution, Nevada Constitution, and statute. Ms. Meadows seeks monetary damages and injunctive relief against the Defendants in this case.

## II.    JURISDICTION AND VENUE

1. Jurisdiction is conferred on this Court by 28 U.S.C. §1331 et. seq. for civil claims arising under the Constitution and laws of the United States. Pursuant to §1331, this Court has original subject matter jurisdiction over Plaintiff's claims brought under 42 U.S.C. §1983.

2. The Court has jurisdiction over claims arising under the laws of the State of Nevada pursuant to supplemental jurisdiction provided for by 28. U.S.C. §1367(a).

3. The prayer for relief is predicated on 28 U.S.C. §2201 and Fed. R. Civ. P. 38. This Court has jurisdiction to award Plaintiff damages pursuant to 42 U.S.C. §1983 and Nev. Rev. Stat. §41.130. Authorization for the request for attorneys' fees and costs is conferred by 42 U.S.C. §1988(b).

4. Each Defendant acted, purported to act, and/or purported to act in the performance of their official duties, and thus each of the Defendants acted under color of law and subject to liability as state actors pursuant to 42 U.S.C. §1983. *See McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000).

5. Because Defendants are not arms of the State this suit is not barred by the Eleventh Amendment to the United States Constitution. *See Eason v. Clark County School Dist.*, 303 F.3d 1137, 1147 (9th Cir. 2002).

6. This Court is the proper venue for this action pursuant to 28 U.S.C. §1931(b)(2) as all claims arise from events that took place in Nevada, specifically High Desert State Prison.

### III. PARTIES

7. Plaintiff Daisy Lynn Meadows, NDOC inmate #1027585, who has been housed at several NDOC facilities.

8. Ms. Meadows was, at all relevant times, a prisoner under the supervision and care of the NDOC.

9. Ms. Meadows entered NDOC custody in 2008.

10. In September 2022, Ms. Meadows was transferred to HDSP, where she is currently incarcerated under the authority of the State of Nevada.

11. Ms. Meadows was assigned the male sex at birth, but expresses the female gender.

12. Ms. Meadows has been diagnosed with gender dysphoria (GD). The Diagnostic and Statistical Manual of Mental Disorders (DSM-V) characterizes gender dysphoria as follows: "[i]ndividuals with gender dysphoria have a marked incongruence between the gender they have been assigned to (usually at birth, referred to as natal gender) and their experienced/expressed gender." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 453 (5th ed. 2013).

13. Defendant Joseph Lombardo is the Governor of the State of Nevada. As Governor, Mr. Lombardo is a member of the Board of State Prison Commissioners. Mr. Lombardo is sued in his official capacity.

14. Defendant Aaron Ford is the Attorney General of the State of Nevada. As Attorney General, Mr. Ford is a member of the Board of State Prison Commissioners. Mr. Ford is sued in his official capacity.

15. Defendant Cisco Aguilar is the Secretary of State of Nevada. As Secretary of State, Mr. Aguilar is a member of the Board of State Prison Commissioners. Mr. Aguilar is sued in his official capacity.

3

16. Upon information and belief, Defendant Julie Williams is a current associate warden at HDSP, where Ms. Meadows is currently incarcerated.  As an associate warden, Ms. Williams is responsible for ensuring the health and safety of inmates at the facility.  Ms. Williams is sued in her official and individual capacity.

17. Upon information and belief, Casework Lopez is an NDOC employee at HDSP.  He was employed as an inmate case worker during the time Ms. Meadows has been incarcerated at that facility.  Casework Lopez is sued in his individual capacity.

18. Upon information and belief, Doe Defendants 1-20 are employee of at HDSP.  These employees retaliated against Ms. Meadows when she engaged in protected First Amendment speech.  They are sued in their individual capacities.

## IV.     FACTUAL ALLEGATIONS

**Relevant NDOC Policies:**

19. Administrative Regulation 494 (AR 494) describes NDOC's policies regarding transgender and intersex inmates.

20. According to AR 494, the Director of NDOC is responsible for the establishment of all Departmental policies to ensure public, staff, and inmate safety.

21. According to AR 494, the institution's warden or designee is responsible for ensuring that all inmates have access to evaluation, placement, and appropriate treatment while recognizing the inherent limitations of resources, and the need to maintain facility security, order, and discipline, and the health and safety of all inmates.

**Conditions of Confinement at High Desert State Prison**

22.  In or around September 2022, Ms. Meadows was transferred to HDSP.

23. Around September 2022, Ms. Meadows reported incidents of sexual abuse and sexual victimization to HDSP staff.

24. As a result of her reports, Ms. Meadows was placed in administrative segregation aka "the hole."

25. Around November 2022, Ms. Meadows was moved from her housing unit to another housing unit.

26. This move was not announced, purportedly random, and done without consultation with Ms. Meadows or her caseworker or psychological caseworker.

27. This move placed Ms. Meadows in unreasonable danger because her new unit housed known sex offenders who would target her.

28. This move also placed Ms. Meadows in a cell with an unknown male inmate who could pose a risk to her safety.

29. In or around April 2023, NDOC officials and employees housed Peter Kefalas, a known abuser of Ms. Meadows, with Ms. Meadows, resulting in an unsafe housing situation.

30. Throughout her time at HDSP, NDOC officials and employees knowingly removed inmates, including who have previously sexually assaulted Ms. Meadows, from her "enemies" list.

31. Their removal has allowed Ms. Meadows to be housed with these inmates, resulting in an unreasonable risk to her safety.

32. Throughout her time at HDSP, NDOC officials and employees knowingly added Ms. Meadow's friend to her "enemies" list.

33. Their addition prevented them from being housed with Ms. Meadows, resulting in an unreasonable risk to her safety.

**Retaliation and Misgendering at HDSP**

34. Around September 2022, Ms. Meadows filed an informal grievance. This grievance was rejected because Ms. Meadows did not use the name on her judgment of conviction "Roy Trost."

35. Around January 2023, Julie Willians, HDSP associate warden, misgendered Ms. Meadows by referring to her as a male during a discussion about Ms. Meadows's access to makeup.

36. Around February 2023, Associate Warden Williams again misgendered Ms. Meadows and referred to her using male pronouns.

37. When Ms. Meadows complained about being misgendered, Williams sent other NDOC employees, Does 1-20, to harass Ms. Meadows about ribbons in her hair.

38. Around March 2023, Williams continued to misgender Ms. Meadows by rejecting grievances because it was not filed using the name listed on her judgment of conviction.

39. Also around March 2023, Williams threatened Ms. Meadows, telling her that if she continued to file grievances, Williams would confiscate and not return them.

40. Around April 2023, Williams blocked and rejected Ms. Meadows's Prison Rape Elimination Act (PREA) complaints, instructing Meadows to file "actual allegations of PREA."

41. Around May 2023, Caseworker Lopez went around to inmates' doors, including Ms. Meadows, to follow up on PREA complaints. This was done in a manner where other inmates could hear the conversation. This process placed Ms. Meadows in danger because it subjected her to potential abuse, retaliation, and violence from other inmates for being a "snitch."

**Failure to Provide Medical Care**

42. Around March 2023, Ms. Meadows reported that she had been sexually assaulted. Despite her report, she was not treated for her injuries, nor was she given any supplies to clean her own injuries.

43. Around April 2023, Ms. Meadows reported being raped, but no medical follow up was performed.

**First Cause of Action**
Violation of the First Amendment to the United States Constitution
Pursuant to 42 U.S.C. §1983
(Relitation Against Plaintiff for Engaging in Protected Speech)

44. Plaintiff incorporates Paragraphs 1 through 43 of this Complaint as if fully set forth in this section.

45. To state a First Amendment retaliation claim, a plaintiff must allege: (1) the plaintiff engaged in First Amendment protected speech; (2) adverse action was taken against the plaintiff, (3) there is a causal connection between the adverse action and the protected speech, (4) the defendants' actions would chill or silence a person of ordinary firmness from future First Amendment activities, and (5) the retaliatory action did not advance the legitimate goals of the correctional institution. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

46. Upon information and belief, Defendants took actions described above, including moving Ms. Meadows to more restrictive or dangerous housing as well as ridiculing and harassing her, in response to Ms. Meadows filing grievances and raising concerns about the conditions of her confinement.

47. Defendants' retaliatory conduct chilled Ms. Meadows's protected speech.

48. The Defendants' conduct did not advance a legitimate goal of the correctional institution.

49. Rather, the Defendants' actions were meant to punish Ms. Meadows for engaging in First Amendment protected speech.

50. As a result of the violation of her rights, Ms. Meadows has suffered, and will continue to suffer harm, and is entitled to monetary, compensatory, and punitive damages, subject to proof, as well as injunctive relief.

**Second Cause of Action**
Violation of the Eighth Amendment to the United States Constitution
Pursuant to 42 U.S.C. §1983
(Unsafe Prison Conditions)

51. Plaintiff incorporates Paragraphs 1 through 50 of this Complaint as if fully set forth in this section.

52. The Eight Amendment request that prison officials provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986).

7

53. To establish a violation of the duty to provide for an inmate's personal safety, the plaintiff must allege "conditions posing a substantial risk of serious harm" and Defendants were "deliberate[ly] indifferent to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

54. While incarcerated at HDSP, Ms. Meadows repeatedly raised concerns about her housing situation.

55. Specifically, Ms. Meadows was concerned about her safety when she was housed with inmates with histories of violence and sex offense.

56. Upon information and belief, the Defendants housed Ms. Meadows with Peter Kefalas, an inmate with a history of violence against Ms. Meadows.

57. Upon information and belief, the Defendants removed inmates from Ms. Meadows's "enemies" list so that she could be housed with them.

58. The Defendants knew their actions were a serious threat to Ms. Meadows's personal safety, failed to rehouse Ms. Meadows, and were deliberately indifferent to the harm Ms. Meadows suffered and would continue to suffer because of the substantial risk posed by her housing conditions.

59. As a result of the violation of her rights, Ms. Meadows has suffered, and will continue to suffer harm, and is entitled to monetary, compensatory, and punitive damages, subject to proof, as well as injunctive relief.

**Third Cause of Action**
Violation of the Eighth Amendment to the United States Constitution
Pursuant to 42 U.S.C. §1983
(Deliberate Indifference to Medical Needs)

60. Plaintiff incorporates Paragraphs 1 through 59 of this Complaint as if fully set forth in this section.

61. The Eight Amendment request that prison officials provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint*, 801 F.2d at 1107 .

62. Deliberate indifference "may be manifested in two ways. It may appears when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992).

63. Ms. Meadows repeatedly informed the Defendants of her serious medical need, specifically treatment after she was sexually assaulted.

64. Despite knowing of Ms. Meadows's serious medical need, the Defendants denied Ms. Meadows follow up treatment and supplies for her to treat her own injuries.

65. As a result of the violation of her rights, Ms. Meadows has suffered, and will continue to suffer harm, and is entitled to monetary, compensatory, and punitive damages, subject to proof, as well as injunctive relief.

**Fourth Cause of Action**
Violation of the Nevada State Constitution
Free Speech

66. Plaintiff incorporates Paragraphs 1 through 65 of this Complaint as if fully set forth in this section.

67. Article 1, Section 9 of the Constitution of the State of Nevada provides "[e]very citizen may freely speak, write, and public his sentiments on all subjects … and no law shall be passed to restrain or abridge the liberty of speech."

68. Defendants' actions constituted violations of Ms. Meadows's free speech rights under the Constitution of the State of Nevada, namely chilling her free speech rights to file grievances and speak out about the conditions of her confinement.

69. As a result of the violation of her rights, Ms. Meadows has suffered, and will continue to suffer harm, and is entitled to monetary, compensatory, and punitive damages, subject to proof, as well as injunctive relief.

/// /// ///

**Fifth Cause of Action**
Intentional Infliction of Emotion Distress

70. Plaintiff incorporates Paragraphs 1 through 69 of this Complaint as if fully set forth in this section.

71. "To establish a cause of action for intentional infliction of emotional distress, [a plaintiff] must establish the following: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Olivero v. Lowe*, 116 Nev. 395, 398 (2000).

72. Defendants engaged in extreme and outrageous conduct by manipulating Ms. Meadows's "enemies" list so that she would be housed with inmates who posed an unreasonable risk to her safety, misgendering Ms. Meadows, and housing Ms. Meadows with an inmate with a history of violence against her.

73. As a result of Defendants' actions, Ms. Meadows suffered, and continues to suffer, severe and extreme emotional distress.

74. Defendants' actions are the proximate cause of Ms. Meadows's emotional distress.

75. As a result of the violation of her rights, Ms. Meadows has suffered, and will continue to suffer harm, and is entitled to monetary, compensatory, and punitive damages, subject to proof, as well as injunctive relief.

### V.   PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment in her favor and against Defendants jointly and severally, and award:

   a. Monetary, compensatory, and punitive damages allowable under law in an amount to which the Plaintiff is found to be entitled.

   b. Attorney's fees and costs incurred herein pursuant to 42 U.S.C. §1988 and all applicable statutory authority; and

c.  Entry of any and all further relief the Court deems just and proper.

## VI. DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues in this action to the extent authorized by law.

Dated: July 19, 2024.

                                      Respectfully submitted,

                                      */s/ Yi Lin Zheng*

                                      Yi Lin Zheng
                                      Attorney for Daisy Lynn Meadows

                                      */s/ Andrew Wong*

                                      Andrew Wong
                                      Attorney for Daisy Lynn Meadows

**CERTIFICATE OF ELECTRONIC SERVICE**

The undersigned hereby certifies that he is an employee of Vegas Golden law for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on July 19, 2024, she served an electronic copy of the above and foregoing **FIRST AMENDED COMPLAINT** by electronic service (ECF) to the person named below:

Aaron Ford
Attorney General for the State of Nevada
Grant Sawyer Building
555 E. Washington Avenue, Suite 3900
Las Vegas, NV 89101

*/s/ Yi Lin Zheng*
Employee of Vegas Golden Law